**IN THE COURT OF APPEALS OF IOWA**

No. 21-0428
Filed July 21, 2021

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**J.R., Father,**
       Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Kim Aboyure, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Barbara E. Maness, Davenport, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The father of J.R., born in May 2019, appeals the termination of his parental rights.[1] The family came to the attention of the Iowa Department of Human Services (DHS) shortly before the child's birth over concerns the mother was using illegal substances. Both parents tested positive for methamphetamine and amphetamines then, as did the child's umbilical cord after birth.

After birth, the family lived with the paternal grandparents, and the DHS developed a safety plan under which the grandparents agreed to supervise all contact between the parents and child. As the parents failed to fully engage with substance-abuse testing and treatment, the juvenile court adjudicated the child in need of assistance. The court at first allowed the parents to maintain custody of the child under the safety plan, but due to multiple positive drug tests from both parents, the court removed the child from the parents' custody while still allowing the parents to remain in the grandparents' residence. The month after the removal order issued, the child tested positive for amphetamines and methamphetamine. As a result, the parents agreed to move out of the grandparents' home to avoid placing the child in foster care.

Based on perceived lack of progress by the parents, the State initiated termination-of-parental-rights proceedings against the parents. Following a hearing, the juvenile court terminated the parental rights of both parents under Iowa Code section 232.116(1)(d) and (h) (2021).

---

[1] The mother's parental rights were also terminated. She filed notice of appeal, but her appeal was dismissed for violating other appellate filing requirements.

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

The father begins by challenging the statutory grounds for termination. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. We choose to analyze the statutory ground under section 232.116(1)(h), which allows the court to terminate parental rights if it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father only challenges the evidence supporting the fourth element, claiming the child could be returned to his custody at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

Throughout nearly two years of DHS involvement, the father has tested positive for amphetamines and methamphetamine multiple times. The most recent drug test—a hair-stat test collected less than two weeks before the termination hearing—was positive for amphetamines and methamphetamine. The parents'

substance abuse has meaningfully endangered the child, as reflected in the child's positive drug tests. A DHS worker assigned to this case testified he could not verify the father had any period of sobriety throughout DHS involvement. A counselor testified the father has been "in denial" and lacks "insight into his addiction." Similarly, the DHS report to the court for consideration at the termination hearing notes the father "does not appear to believe his addiction is still an ongoing issue for him, despite the ongoing positive test results."

The father asserts he interacts well with the child, he is attending substance-abuse and mental-health treatment, and he has provided negative drug tests for his job since securing employment in October 2020. We recognize the father has made recent progress, but this progress cannot overcome the serious concerns over his largely unaddressed addiction. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). Throughout nearly two years of DHS involvement, the father has consistently tested positive for illegal substances while downplaying his addiction. The parents' addiction has already led to positive drug tests and real harm to the child. To the extent the father relies on his job as motivation to remain sober, he is off work for up to six months while he recovers from an injury. We agree the child cannot be returned to the father's custody, and we find the State proved a ground for termination under section 232.116(1)(h).

The father also argues termination is not in the child's best interests. *See* Iowa Code § 232.116(2); *In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a

permanent home are the "defining elements" in determining a child's best interests). As explained above, the father has long-term addiction issues that he has, at most, only begun to address. The father's addiction presents a serious danger to the child no matter how strong his other parenting skills are. We agree termination is in the child's best interests.

Finally, the father requests the child be placed in a guardianship with the grandparents instead of terminating his parental rights. However, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). The child has already been the subject of DHS involvement since birth, and a guardianship would continue to leave the child in limbo in the hopes the father will meaningfully address his substance-abuse issues. *See id.* at 478 ("The child, who is now two years old, deserves a normal life with an adoptive family."). Furthermore, the grandparents were unable to protect the child from the parents' substance abuse during this proceeding, and the threat of repeat exposure would continue if the child were placed in a long-term guardianship with the grandparents. We agree a guardianship is not an appropriate alternative to termination in this case.[2]

**AFFIRMED.**

---

[2] To the extent the father also argues termination is not needed because the grandparents have legal custody of the child, *see* Iowa Code section 232.116(3)(a), we agree the grandparents having custody should not preclude termination under the circumstances present in this case. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (stating termination is generally in the child's best interests "if the grounds for termination of parental rights exist," even if a relative has custody of the child).